## ACKER v. UNITED STATES (No. 159).[1]

1. LIMITING THE MEANING OF A COMMERCIAL PHRASE.
    To fix and limit a phrase to a simple commercial meaning, it is necessary to show not alone that this phrase is improperly employed in describing a given commodity, but at the same time to show it is employed definitely and uniformly in the United States to describe another and different commodity.

2. FRUITS PRESERVED IN SUGAR.
    The words "fruits preserved in sugar, molasses, spirits, or in their own juices," occurring in paragraph 263, tariff act of 1897, were not there employed in a commercial or trade sense, but in the sense attaching to these words in common, ordinary usage.

3. CHUTNEY.
    It appearing from the evidence that chutney is a fruit, and as imported, preserved in sugar, chutney was dutiable under paragraph 263, tariff act of 1897, and this regardless of whether it may or may not have been included within paragraph 262 of that act.

United States Court of Customs Appeals, March 20, 1911.

APPEAL from United States Circuit Court for Southern District of New York, Abstract 22211 (T. D. 30142).

[Affirmed.]

*B. A. Levett* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*William K. Payne* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal from a decision of the Circuit Court for the Southern District of New York affirming a decision of the Board of General Appraisers. The importation is of "chutney." It was assessed for dutiable purposes by the collector of customs at the port of New York as "fruits preserved in sugar, molasses, spirits, or in their own juices," under paragraph 263 of the tariff act of 1897. The importers allege that the proper dutiable classification is under paragraph 262

---

[1] Reported in T. D. 31431 (20 Treas. Dec., 534).

as "other edible fruits  *  *  *  when dried, desiccated, evaporated, or prepared in any manner," or as an unenumerated manufactured article under the provisions of section 6 of the act.

Chutney as defined by the lexicographers is uniformly described as follows:

Century Dictionary:

*Chutney.*—In the East Indies, a condiment compounded of sweets and acids. Ripe fruit (mangos, tamarinds, cocoanuts, raisins, etc.), spices, sour herbs, cayenne, and lime-juice are the ordinary ingredients. They are pounded and boiled together, and either used immediately, as with curries or stews, or bottled.

Standard Dictionary:

*Chutney.*—A piquant condiment or relish compounded of fruits, spices, chillies, lime-juice, etc.

Oxford Dictionary:

*Chutney.*—A strong, hot relish or condiment compounded of ripe fruits, acids, or sour herbs, and flavored with chillies, spices, etc.

New International Cyclopedia:

*Chutney.*—An East India condiment, a compound of mangoes, chillies, capsicum (*q. v.*), and lime-juice, with other native fruits, such as tamarinds, the flavor being heightened by garlic.

The claim of the importers asserted at the oral argument and in the brief is twofold. First, they maintain that *sirup* when used as a preservative is not within the language of paragraph 263, in that that paragraph provides for fruits preserved in sugar. Secondly, that the words "fruits preserved in sugar, molasses,  *  *  *  or in their own juices," as used in paragraph 263 are used in a commercial and trade sense, and not according to the common and ordinary acceptation of that phrase.

The Assistant Attorney General maintains the contrary of the two propositions, and that the merchandise does not come within the description of "other edible fruits  *  *  *  prepared in any manner," as used in paragraph 262, claiming that phrase as limited by the doctrine *noscitur a sociis* to the genus of its associate words in the paragraph excludes this merchandise. In our view of the case, decision of this point is unnecessary.

That a preservative of "sirup" is within the term "preserved in sugar," as used in paragraph 263, has been settled by this court in Austin *v.* United States, *supra*, p. 287 (T. D. 31322). The words "fruits preserved in sugar, molasses, spirits, or in their own juices," in substantially the same form have appeared in all tariff acts from and including that of 1883, at least, to and including the existing law. The phrase has been the subject of judicial interpretation by the

Board of General Appraisers, and the courts generally, numerous times.

And, whether it is sought to establish that the words themselves are an *eo nomine* designation as accepted by trade and commerce, or a phrase the general scope of which is limited by accepted application and use thereof by trade and commerce to specific merchandise, the decisions are apparently lacking in uniformity.

The phrase "fruits preserved in  *  *  * spirits," as used in the tariff act of 1897, was, as early as October, 1898, in an exceedingly able and elaborate opinion by Judge Somerville, held not to have been used in a commercial sense. The opinion states:

Merchants have also been examined as to the meaning in the trade and commerce of this country of the phrases "preserved fruits" and "fruits preserved in spirits."

The overwhelming weight of the testimony unquestionably is that in the trade and commerce of this country, on and prior to July 24, 1897, there was no particular commercial or technical meaning attached to these phrases. See G. A. 4296 (T. D. 20212).

On appeal to the United States Circuit Court for the Southern District of Ohio this decision was affirmed, the court saying:

It is also admitted, or too evident to be denied, that the words "fruits preserved in spirits" had no technical or commercial meaning different from their popular and ordinary meaning at the time of the enactment of the tariff law of 1897. See Voight v. Mihalovitch (125 Fed. Rep., 78).

Later, in 1899, in G. A. 4503 (T. D. 21428), the board announced the same conclusion.

On appeal to the United States Circuit Court for the Southern District of New York this decision of the board was affirmed by consent without opinion. See T. D. 27397, suits 2984 and 3442.

Again, in G. A. 4663 (T. D. 22039), the board reached the same conclusion. No appeal seems to have been taken from that decision of the board.

So in 1889, in Levy v. Robertson (38 Fed. Rep., 714), Judge Lacombe, sitting as circuit judge for the southern district of New York, instructed the jury that in absence of sufficient testimony to the contrary the words "preserved in sugar, spirits, sirup, and molasses," as used in the tariff act of 1883, were used in their ordinary, common, and popular definition.

In February, 1903, in the case of the United States v. Nordlinger (121 Fed. Rep., 690), the question was again before the United States Circuit Court of Appeals, Second Circuit, Judges Wallace and Lacombe sitting. The phrase under consideration was "fruits preserved in sugar," as used in the tariff act of 1883. The opinion in that case shows great study and research and announces that the record was voluminous. The testimony in the record was gathered at several ports of the United States. We think the conclusion reached by the

court in that case was sound and that an extended quotation is instructive and warranted. The subject matter being citron, the court said in part:

Fruit thus treated has certainly been preserved in sugar (or in sirup), and would seem to come fairly within the exception. The importers, however, contend that, although in fact preserved in sugar, the language of trade and commerce requires that it shall be admitted free of duty, and a most voluminous record has been presented to enforce such contention. It is suggested that the phrase "fruits preserved in sugar," has such a meaning in trade that citron, although in fact within its terms, must be excluded from the provisions. * * *

* * * It should also be noted that it is not a name to which the importers seek to affix a special trade meaning, as was the case in Maddock *v.* Magone (152 U. S., 371; 14 Sup. Ct., 588, 38 L. Ed., 482), toys; Bogle *v.* Magone (152 U. S., 627, 14 Sup. Ct., 718, 38 L. Ed., 574), sauces; and American Net & Twine Co. *v.* Worthington (141 U. S., 472; 12 Sup. Ct., 55, 35 L. Ed., 821), gilling twine. It is a phrase which would seem to have been selected rather as descriptive of what Congress had in mind than as importing some special trade meaning. It is understood, of course, that a phrase has sometimes been held to have a peculiar meaning when used in a tariff act, because trade used that phrase and used it with such peculiar meaning (Toplitz *v.* Hedden, 146 U S., 257; 13 Sup. Ct., 70, 36 L. Ed., 961), but quite frequently the use of descriptive language is found to indicate an intention not to use words in any sense different from that which characterizes them in common speech. Maillard *v.* Lawrence (16 How., 251, 14 L. Ed., 925); DeForest *v.* Lawrence (13 How., 274, 14 L. Ed., 143); Seeberger *v.* Cahn (137 U. S., 97; 11 Sup. Ct., 28, 34 L. Ed., 599); Barber *v.* Schell (107 U. S., 617; 2 Sup. Ct., 301, 27 L. Ed., 490); Newman *v.* Arthur (109 U. S., 132; 3 Sup. Ct., 88, 27 L. Ed., 883). Again it is essential to the admission of testimony as to trade meaning that such meaning should differ from the ordinary dictionary meaning, or that of common speech, otherwise such testimony is immaterial. Maddock *v.* Magone (152 U. S., 368; 14 Sup. Ct., 588, 38 L. Ed., 482). Finally, to give to descriptive language some special trade meaning different from its ordinary meaning by proof of commercial usage, the evidence must show that such usage is "definite, uniform, and general, not partial, local, or personal." Id. (152 U. S., 368; 14 Sup. Ct., 588, 38 L. Ed., 482). See, also, Berbecker *v.* Robertson (152 U. S., 376; 14 Sup. Ct., 509, 38 L. Ed., 484); Saltonstall *v.* Weibusch (156 U. S., 602; 15 Sup. Ct., 476, 39 L. Ed., 549); Sonn *v.* Magone (139 U. S., 421; 16 Sup. Ct., 67, 40 L. Ed., 203); Patton *v.* United States (159 U. S., 506; 16 Sup. Ct., 89, 40 L. Ed., 233); Dennison Manufacturing Co. *v.* United States (18 C. C. A., 543; 72 Fed. Rep., 259).

After reviewing the voluminous testimony in the record in detail, the court concluded:

Upon this record we are unable to reach the conclusion that the phrase "fruits preserved in sugar" has such a definite, uniform, and general trade meaning that it will not operate to draw out of the third great group of fruits named in the free list, viz, "fruits dried," fruits which, although dried, are also in fact preserved in sugar.

On the other hand, in United States *v.* Reiss & Brady (136 Fed. Rep., 741), decided January 4, 1905, by the Circuit Court of Appeals, Second Circuit, on appeal from G. A. 4946 (T. D. 23130), opinion by Lacombe, judge, the court in construing the phrase " fruits preserved in sugar, molasses, spirits, or their own juices," as used in paragraph 263 of the tariff act of 1897, stated:

We are satisfied that fruits preserved in sugar, in spirits, in juice, etc., are known commercially as a class by themselves, the various fruits which that class includes being prepared for the particular use and put up in the particular form, which use

and form constitute the distinctive characteristics of the category for which those fruits are prepared. Upon that class, as a class well known commercially, Congress has imposed duty by paragraph 263.

Again, in Causse Manufacturing Co. v. United States, reported in 151 Fed. Rep., 4, the same court, Judges Wallace, Lacombe, and Townsend sitting, stated *per curiam* as follows:

We are satisfied that the importations were not within the description of paragraph 263. That paragraph is intended to apply to fruits which have been "preserved;" that is, treated so as to become a preserve or comfit, and not to such as merely remain temporarily in their natural juices. As this court pointed out in United States v. Reiss (136 Fed. Rep., 741; C. C. A., 393), the paragraph refers to a class of goods which are commercially known and dealt in as preserved fruits.

We are satisfied from a careful consideration of these authorities and the records presented in the several cases, and in the absence of more definite proof than is presented in this record or any other record here reviewed, that the words "fruits preserved in sugar, molasses, spirits, or in their own juices," as used in the tariff act of 1897, were not used in a commercial or trade sense, either *eo nomine* as a trade name or designation or as a descriptive trade phrase limited by the trade understanding to certain classes of merchandise, but that the phrase is used as commonly and generally understood in ordinary parlance.

We are of the opinion that it falls within that class of cases wherein quite frequently the use of descriptive language is found to indicate an intention not to use words in any sense different from that which characterizes them in common speech. Maillard v. Lawrence (16 How., 251); DeForest v. Lawrence (13 How., 274); Seeberger v. Cahn (137 U. S., 97); Barber v. Schell (107 U. S., 617); Newman v. Arthur (109 U. S., 132).

This conclusion is further reinforced by the fact that in the Reiss & Brady case (136 Fed. Rep., 741) the question of commercial designation or the commercial application of the phrase was not an issue. That case was a review of G. A. 4946 (T. D. 23130), upon the effect of the words "fruits preserved in sugar, molasses, spirits, or in their own juices," as used in the act of 1897, and the sole issue in that case decided by the board and necessary to decision in the court of appeals was the relative specificness of the paragraphs under consideration. So far as we are able to gather from the record presented there was neither testimony as to commercial designation nor was that a necessary issue to the decision.

Reading the decision, therefore, in view of the record presented, the statement of the court should be construed rather that the class of goods included within paragraph 263 was a different class of goods from that covered by paragraph 262, and that as to such goods paragraph 263 was the more specific. The same may be said of Causse Manufacturing Co. v. United States (151 Fed. Rep., 4). The statement in that case: "* * * the paragraph refers to a class of goods which are commercially known and dealt in as preserved fruits" is

based upon the authority of the Reiss case. Commercial designation was not an issue nor a necessary matter of consideration in the Causse case, and therefore should be regarded merely an obiter reaffirmance of the dictum in the Reiss & Brady case.

While this record tenders testimony in an endeavor to establish that these words are used in a commercial sense, we think the evidence falls far short of that result. While the testimony no doubt is of prime quality, having been uttered by witnesses of long experience in probably the largest houses dealing in this class of goods in the country, the scope of the testimony went only to show that chutney was bought and sold as "chutney," and was not considered or classed by these houses as a preserve or a fruit preserved in its own juices.

The further requisite, however, is necessary in assigning to a phrase a commercial limitation or application that it must be proven not alone that the imported merchandise is not classed therewithin, but there must be assigned by proof to that phrase a scope and meaning which is clearly, definitely, and uniformly understood throughout the United States which includes some other merchandise and excludes the imported merchandise. Clafflin *v.* Robertson (38 Fed. Rep., 92); Sidenberg *v.* Robertson (41 Fed. Rep., 763). It likewise must be shown in such cases that such meaning of the phrase in trade and commerce should differ from the ordinary dictionary meaning or that of common speech. Maddock *v.* Magone (152 U. S., 368).

The *presumption* is, as stated in Arthur *v.* Swan (103 U. S., 597).

While tariff acts are generally to be construed according to the commercial understanding of the terms employed, language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown.

Until, therefore, the phrase is assigned by testimony some other meaning the presumption obtains.

In this record there is no testimony assigning to the language employed by the statute any general and uniform scope or application in trade and commerce different from its ordinary accepted and dictionary meaning. Nor is there any testimony whatsoever assigning or attempting to assign to the phrase a general and uniform meaning and understanding in trade and commerce including any other particular merchandise as well as excluding the imported merchandise. On the contrary, the record leaves the merchandise, consistent with all the testimony offered, fully within the natural meaning of the language of the statute.

While this merchandise in common parlance, as evidenced by the lexicographic authorities quoted, is deemed a condiment and is known by the specific name "chutney," nevertheless the chemist's analyses in the record indisputably show that of its contents from 35 to 45 per cent consists of dextrose and levulose—sugar.. The chemist's certificate further shows that it consisted of "fruits" to which are added

spices and that the preservative is the sirup and the spices. The sweet pungent smell of the samples confirms this.

Being a fruit, therefore, the sugar being the preservative agency regardless of whether it is or is not included within paragraph 262, it is properly dutiable under paragraph 263, that being the more specific provision and the merchandise being within the common and general scope of the words used in that paragraph.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.